ALLERTON BEVERAGE DISTRIBUTOR, INC., Respondent, *v.* MILIZ TRANSPORTATION, INC., Appellant.

First Department, October 23, 1973.

*Julius L. Schapira* of counsel (*Fleishaker, Shulman & Fierson,* attorneys), for appellant.

*Fred Goldenberg* for respondent.

*Per Curiam.* In 1965 plaintiff entered into a "Master Distributor's Agreement" with Coca-Cola Bottling Co. of New York, covering a substantial territory in Bronx County. No substitution of distributors and no transfer of territory could devolve on any third party without Coca-Cola's approval. As of June 16, 1970, plaintiff and defendant entered into an agreement transferring the Co-op City portion of plaintiff's territory

to defendant, subject to Coca-Cola's approval. The closing did not take place for the reason that Coca-Cola failed to approve the assignment of a portion only of the contract.

Thereafter in September, 1970, the parties entered into an agreement from which flowed the controversies at bar. That agreement provided again for an exclusive subdistributorship for the Co-op City territory subject, however, to the 1965 distributor's agreement between plaintiff and Coca-Cola. It further provided that in the event Coca-Cola disapproved the exclusive right to sell its beverage granted by plaintiff to defendant, then upon five days' written notice said exclusive right shall terminate and defendant must cease all activities granted under the agreement. Defendant paid $2,500 at the signing of the agreement and gave plaintiff promissory notes for $17,500, the balance of the purchase price, payable in weekly installments of $80.77. Defendant embarked on the successful exploitation of its subterritory. The weekly payments were duly made. The Coca-Cola Company dealt with the defendant-subdistributor throughout the ensuing period without objection and without any adverse action against plaintiff under its master distributor's agreement with plaintiff.

The September 1970 agreement granted the defendant an option to purchase the remainder of plaintiff's territory at a price of $75,000 during the first two years and thereafter for $85,000 beginning August 31, 1972. Defendant exercised its option and notified plaintiff of its desire to acquire the remainder of plaintiff's territory. In July, 1971 Coca-Cola indicated its willingness to process the application for approval of the exercise of that option and acquisition by defendant of plaintiff's entire territory. For reasons not here relevant Coca-Cola thereafter sought to rescind its approval. Solely to establish its right to change its mind and withhold approval, Coca-Cola invoked the arbitration provision of its agreement with plaintiff. The arbitrator found no impediment to a rescission of prior approval and ruled in Coca-Cola's favor. That award was subsequently confirmed. Incidentally, we note that Coca-Cola once again has changed its mind and is now willing to reconsider the transfer.

Thereafter in January, 1972 plaintiff served notice of termination of the September 1, 1970 agreement and requested that defendant cease from serving Co-op City customers. Nonetheless, appellant continued to service its customers and to pay $80.77 weekly by check to the plaintiff who retained the checks but did not deposit them.

Plaintiff did not have the unconditional right to terminate the agreement. Plaintiff's right to terminate rested squarely on disapproval by Coca-Cola " of the exclusive right * * * granted * * * herein." The only exclusive right granted is the right to service a part of plaintiff's territory, known as Co-op City. Coca-Cola has never disapproved of the partial assignment of the Co-op City territory. If anything, it has registered tacit approval by tolerating appellant's service of that territory for over three years. Its only expression on the subject occurred in June, 1970, before the parties entered into the agreement of September 1, 1970. At that time Coca-Cola did not disapprove, it merely withheld its approval. Furthermore, it would be most inequitable under the circumstances herein to permit the plaintiff to profit from defendant's efforts in successfully, and at its own considerable cost and expense, increasing sales by a very substantial margin in Co-op City.

The trial court properly denied defendant's request for specific performance of the buy-out provisions of the agreement. It would be inequitable to command plaintiff to transfer its territory if Coca-Cola would disapprove and thereby terminate the master agreement.

The interlocutory judgment of the Supreme Court entered May 24, 1973 in Bronx County should be modified on the law and the facts so as to deny injunctive relief and delete the provisions for an assessment of damages. Except as modified, the judgment should be affirmed as a final judgment, without costs or disbursements.

STEVENS, P. J., NUNEZ, KUPFERMAN, MURPHY and LANE, JJ., concur.

Interlocutory judgment, Supreme Court, Bronx County entered on May 24, 1973, unanimously modified, on the law and the facts, so as to deny injunctive relief and delete the provisions for an assessment of damages. Except as so modified, the judgment is affirmed as a final judgment, without costs and without disbursements.